## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MINNESOTA

| | |
|---|---|
| J.H., a minor child, by his parents and natural guardians, Heather Heath and Gregory Heath, and Heather Heath and Gregory Heath, individually | * <br> * <br> * |
| Plaintiffs, | * |
| v. | Court File No.:_____ <br> * |
| Mayo Clinic Rochester d/b/a Mayo Clinic a/k/a Rochester Methodist Hospital; Keith L. Johansen, M.D.; and Larisa P. Gavriolova Jordan, M.D. | * <br> * <br> * |
| Defendants. | * |

## COMPLAINT AND DEMAND FOR JURY TRIAL

NOW COME Plaintiffs, J.H., a minor, by his parents and natural guardians, Heather Heath and Gregory Heath, and Heather Heath and Gregory Heath, individually, through their attorneys, Howard A. Janet, Kenneth M. Suggs, Stephen C. Offutt, and Keith D. Forman, and Janet, Jenner & Suggs, LLC, and Reid Rischmiller and Rischmiller & Knippel, LLP and allege the following:

## <u>INTRODUCTION</u>

This is a complex medical malpractice action arising from substandard health care provided to Plaintiff Heather Heath and her then-unborn child, Plaintiff J.H., on or about January 23, 2004. It involves the failure to properly manage the labor and delivery of

1

Heather Heath; the failure to recognize and/or respond to the obvious deteriorating fetal response to labor; and the failure to timely deliver her son, J.H..

## THE PARTIES

1.      Plaintiffs, Heather Heath and Gregory Heath, are the parents and natural guardians of J.H., a minor child, and as such are required to care for his needs and necessities, including medical care and attention.

2.      Plaintiffs Heather Heath, Gregory Heath, and J.H. are residents of the county of La Crosse, in the State of Wisconsin, and are citizens of the State of Wisconsin.  Their address is 930 West Avenue, Onalaska, Wisconsin 54650.

3.      At all material times, Defendant Mayo Clinic Rochester d/b/a Mayo Clinic a/k/a Rochester Methodist Hospital (hereinafter "Mayo") was a business organization engaged in providing health care services, acting directly, and by and through its actual and/or apparent agents, servants and/or employees, including but not limited to Defendant Larisa P. Gavriolova Jordan, M.D., Defendant Keith L. Johansen, M.D., the labor and delivery nursing staff, residents, and/or attending physicians at Defendant Mayo, in its care of Plaintiffs Heather Heath and J.H. on or about January 23, 2004, in the City of Rochester, in the State of Minnesota, and maintaining offices and places of business in the City of Rochester, in the State of Minnesota.  Defendant Mayo may be served at 200 1st Street SW, Rochester, Minnesota 55905.

4.      At all material times, Defendant Larisa P. Gavriolova Jordan, M.D. (hereinafter

"Dr. Jordan") was a physician duly licensed by the State of Minnesota, authorized to practice obstetrics and gynecology and working individually and as an actual and/or apparent agent, servant, and/or employee for Defendant Mayo, and was practicing within the scope of her actual and/or apparent agency, service and/or employment, and was engaged in the practice of medicine in the City of Rochester, in the State of Minnesota.  Defendant Dr. Jordan may be served at Duke University Medical Center - OB Fertility Clinic, 5704 Fayetteville Road, Durham, North Carolina 27713.

5.     At all material times, Defendant Keith L. Johansen, M.D. was a physician duly licensed by the State of Minnesota, authorized to practice obstetrics and gynecology and working individually and as an actual and/or apparent agent, servant, and/or employee for Defendant Mayo, and was practicing within the scope of his actual and/or apparent agency, service and/or employment, and was engaged in the practice of medicine in the City of Rochester, in the State of Minnesota.  Defendant Dr. Johansen may be served at Mayo Medical System, 200 1st Street SW, Rochester, Minnesota 55905.

## JURISDICTION & VENUE

6.     Jurisdiction is invoked in the United States District Court alleging diversity of citizenship pursuant to 28 U.S.C. § 1332(a)(1) and (c)(1), the controversy being between citizens of different states and the matter in controversy exceeding $75,000.00.

7.     Venue is invoked in the United States District Court for the District of Minnesota pursuant to 28 U.S.C. § 1391(a)(2) because Minnesota is the site where a

3

substantial part of the events or omissions giving rise to this suit occurred.

## GENERAL ALLEGATIONS AND AGENCY

8.      At all material times, a health care provider/patient relationship existed between Defendants Mayo, Dr. Jordan, and Dr. Johansen and the Plaintiffs, J.H., a minor, and his mother, Heather Heath.

9.      At all material times, Defendant Mayo, in connection with its health care business activities, employed the services of physicians, nurses, and other professional employees including, but not limited to, Defendants Dr. Jordan, Dr. Johansen, the nursing staff, residents, and/or attending physicians at Defendant Mayo, and held them out and warranted them to the public as competent, careful, and experienced in the medical care and treatment of patients.

10.      At all material times, Defendant Dr. Jordan was acting individually and as the actual and/or apparent agent, servant and/or employee of Defendants Mayo and/or Dr. Johansen; and Defendant Dr. Jordan held herself out to the Plaintiffs, J.H., and his mother, Heather Heath, in particular, and to the public in general, as being an able and skilled physician possessing the same or higher level of skill and training as other members in her profession; and that she was well able to render proper and adequate obstetrical care and treatment to the Plaintiff and his mother.

11.      At all material times, Defendant Dr. Johansen was acting individually and as the actual and/or apparent agent, servant and/or employee of Defendant Mayo; and

4

Defendant Dr. Johansen held himself out to the Plaintiffs, J.H., and his mother, Heather Heath, in particular, and to the public in general, as being an able and skilled physician possessing the same or higher level of skill and training as other members in his profession; and that he was well able to render proper and adequate obstetrical care and treatment to the Plaintiff and his mother.

12.   At all material times, Defendant Mayo was engaged in promulgating policies, procedures and protocols, was responsible for their implementation and adherence, and was responsible for providing and training physicians, physicians-in-training, and nurses and other health care providers, in the field of obstetrics.

## FACTS

13.   Plaintiff incorporates herein the averments contained in paragraphs 1 through 12, as though fully set forth herein.

14.   On or about January 23, 2004, Plaintiff Heather Heath and her unborn child presented to Rochester Methodist Hospital at approximately 36 and 4/7 weeks gestation. Their in-patient care was provided by Defendant Mayo, and its actual and/or apparent agents, servants and/or employees, including, but not limited to, the labor and delivery nursing staff, residents, and attending physicians.

15.   Upon presenting to the hospital, Plaintiff Heather Heath complained of headache, nausea, vomiting, back and abdominal pain. Her blood pressure was significantly elevated. However, positive fetal movement was noted, and the fetal monitor tracings

revealed a good baseline in the 140 to 150 range with a reassuring pattern, when electronic fetal monitoring was applied at about 12:41 a.m.

16.     Defendant Dr. Jordan, along with a third-year medical student, was at Plaintiff's bedside at approximately 1:25 a.m for evaluation.

17.     Electronic fetal monitoring was ongoing.  A bedside ultrasound was performed around 3:00 a.m.  At approximately the same time, Defendant Jordan admitted Plaintiff Heather Heath to the obstetrical unit for preeclampsia, among other reasons.  Preeclampsia is a condition during pregnancy characterized by protein in urine, swelling and hypertension, and is a known risk for placental abruption.

18.     The reported plan at this time was to stabilize Ms. Heath's blood pressure and proceed to repeat cesarean section (a repeat cesarean section had been decided upon earlier in the prenatal period).

19.     The medical records document that Plaintiff Heather Heath's abdominal pain was ongoing, an indication of placental abruption.  Furthermore, preeclampsia, vaginal spotting,  previous cesarean section and other factors that were present were indications of the presence of placental abruption.  A placental abruption is the premature detachment of the placenta from the uterine wall and is a serious complication to the fetus and the mother.

20.     Additional worsening signs of poor fetal tolerance appeared over the course of this time.

21.     At 3:50 a.m., the nurses documented that the tone of Ms. Heath's uterus was

firm (yet another significant sign of uterine abruption). There is no indication in the medical records that this information was conveyed by the nurses to the residents and/or attending physicians caring for Ms. Heath. In any event, no attending physician provided bedside management to Ms. Heath.

22.     By 4:14 a.m., Defendant Dr. Jordan was again present. The fetal monitor continued to exhibit non-reassuring signs. Intrauterine resuscitative measures, including repositioning of the patient and administration of oxygen, were attempted. The contraction pattern was consistent with abruption.

23.     By 4:50 a.m., Plaintiff continued to report abdominal pain. The fetal monitor tracings continued exhibit non-reassuring signs. Defendants Dr. Jordan and Dr. Johansen were present. Dr. Jordan wrote "cannot exclude abruptio placenta."

24.     Thereafter, Defendants noted decelerations in the fetal monitor tracing to 90 beats per minute or lower, with return to a lower baseline and other non-reassuring signs.

25.     A decision was finally made to proceed with the cesarean section. However, that cesarean section did not occur until 5:40 a.m., after approximately an additional hour of non-reassuring fetal tracings. During the cesarean, a large clot was encountered, believed to be secondary to a placental abruption.

26.     Upon delivery, J.H. had Apgar scores (a measurement of fetal well-being from one to ten, with ten being the healthiest) of 1 (one minute), 2 (five minutes) and 3 (ten minutes). He required chest compressions and other resuscitative measures at birth,

including supplemental oxygen.  He was intubated, and sent to the neonatal intensive care unit.  He remained hospitalized for approximately one month. .

27.     J.H. developed seizures approximately within the first day of life.  Additionally, he suffered multi-organ injury.  His initial blood gas revealed an arterial pH of less than 6.8, and a base deficit of -30, indicative of acidosis, and consistent with hypoxic ischemic-encephalopathy having been suffered at or shortly before birth.

28.     MRI scans taken after his birth are consistent with hypoxic ischemic encephalopathy, and demonstrate injury to J.H.'s basal ganglia, which is consistent with near total anoxia before delivery.

29.     The foregoing substandard health care, as more particularly set forth below, directly and proximately caused J.H. to become hypoxic and acidotic, and resulted in his severe and permanent physical and emotional injuries and other damages.

## COUNT I: MEDICAL NEGLIGENCE

30.     Plaintiff J.H. Heath incorporates herein the averments contained in paragraphs 1 through 29, as though fully set forth herein.

31.     Plaintiff J.H., a minor child, by his parents and natural guardians, Heather Heath and Gregory Heath, for his own cause of action against Defendants Mayo, Dr. Jordan, and Dr. Johansen, states and alleges:

32.     Defendants Dr. Jordan and Dr. Johansen, and other health care providers at Defendant Mayo, directly and/or as the actual and/or apparent agents, servants and/or

employees of Defendant Mayo, owed a non-delegable duty to Plaintiffs J.H. and Heather Heath to use that degree of skill and learning of a doctor and/or health care professional who is in good standing, in a similar practice, and in similar circumstances.

33.     Defendants Dr. Jordan and Dr. Johansen, and other health care providers at Defendant Mayo, acting individually and/or as actual and/or apparent agents, servants and/or employees of Defendant Mayo, breached their non-delegable duty to Plaintiff J.H. and his mother Heather Heath, by failing to exercise reasonable care when applying that skill and learning in diagnosing and/or treating patients in the following particulars, among others as may be determined through legal discovery in this action:

    a.     Failing to recognize and/or appreciate the significance of a non-reassuring electronic fetal heart tracings;

    b.     Failing to timely respond to a non-reassuring fetal heart tracing;

    c.     Failing to timely deliver Plaintiff J.H.;

    d.     Failing to timely perform a cesarean section delivery;

    e.     Failing to adequately instruct, train, and/or supervise their agents, servants and employees, including, but not limited to, nurses and resident physicians;

    f.     Failing to recognize the severity of signs and symptoms of preeclampsia and the implications thereof and failure to properly treat the condition of preeclampsia.

9

g.      Failing to recognize the risk factors for placental abruption and failing to timely diagnose placental abruption;

h.      Failing to timely obtain a more senior obstetrical consultation;

i.      Failing to timely carry out a cesarean section after the decision to perform a cesarean section was made;

j.      Failing in other ways to diagnose, treat and manage Plaintiff Heather Heath's condition and that of her unborn child in accordance with the applicable standards of care;

k.      Failing to properly communicate among health care providers; and

l.      Other negligent acts or omissions which may become apparent throughout the course of discovery.

34.      The nurses caring for Plaintiffs, as the actual and/or apparent agents, servants and/or employees of Defendant Mayo, owed a non-delegable duty to Plaintiffs J.H. and Heather Heath to use that degree of skill and learning of a nurse who is in good standing, in a similar practice, and in similar circumstances.

35.      The nurses caring for Plaintiffs, as the actual and/or apparent agents, servants and/or employees of Defendant Mayo, breached their non-delegable duty to Plaintiff J.H. and his mother, Plaintiff Heather Heath, by failing to exercise that degree of skill and learning of a nurse who is in good standing, in a similar practice, and in similar circumstances, and were negligent in the following particulars, among others, as may be determined through

legal discovery in this action:

   a.   Failing to recognize a non-reassuring fetal heart tracing;

   b.   Failing to timely respond to non-reassuring fetal heart tracings;

   c.   Failing to adequately instruct, train, and/or supervise its agents, servants and employees;

   d.   Failing to provide appropriately trained and skilled personnel to care for Plaintiff J.H. at the time of delivery;

   e.   Failing to timely notify the attending physician and/or go up the chain of command to properly treat preeclampsia after being ordered to administer only an anti-nausea medication in the face of severe preeclampsia; this order should have been so obviously negligent to lead reasonable nurses to anticipate that substantial injury to the patient would result from the physician's order or care;

   f.   Failing to timely notify the attending physician and/or go up the chain of command to control the patient's blood pressure and effectuate delivery in response to markedly non-reassuring fetal monitor tracings; this order should have been so obviously negligent to lead reasonable nurses to anticipate that substantial injury to the patient would result from the physician's order or care;

   g.   Failing to communicate possible signs of placental abruption to the

11

appropriate personnel;

h.     Failing to have appropriate protocols and personnel in place to timely carry out a cesarean section once it was called for;

i.     Failing in other ways to manage Plaintiff Heather Heath's condition and that of her unborn child in accordance with the applicable standards of care; and

j.     Other negligent acts or omissions which may become apparent throughout the course of discovery.

36.    Defendant Mayo, directly and/or through its actual and/or apparent agents, servants and/or employees owed a non-delegable duty to Plaintiffs J.H. and Heather Heath to use reasonable care for the protection and well-being of its patients.

37.    Defendant Mayo, directly and/or through its actual and/or apparent agents, servants and/or employees breached their non-delegable duty to Plaintiffs J.H. and Heather Heath by failing to use reasonable care for the protection and well-being of its patients in the following particulars, among others, as may be determined through legal discovery in this action:

a.     Failing to adequately instruct, train, and/or supervise its agents, servants and employees;

b.     Failing to provide appropriately trained and skilled personnel to care for Plaintiff J.H. at the time of delivery;

12

c.      Failing to establish and/or follow and/or enforce appropriate policies, procedures and/or protocols for cesarean section deliveries;

d.      Failing to establish and/or follow and/or enforce appropriate policies, procedures and practices to properly manage patients such and Plaintiff Heather Heath; and

e.      Failing to properly credential, supervise and/or provide adequate training to agents, servants and/or employees, including, but not limited to, the supervision of the labor and delivery staff and physicians who cared for Plaintiff Heather Heath and her baby, Plaintiff J.H.

38.     As a direct and proximate result of the aforementioned negligence of Defendants Mayo, Dr. Jordan, and Dr. Johansen, directly and/or by and through their actual and/or apparent agents, servants and/or employees, Plaintiff J.H. was caused to sustain severe, painful, permanent and disabling injuries, including but not limited to:

a.      Severe respiratory distress;

b.      Acidosis;

c.      Significant and permanent neurological injuries;

e.      Renal injury;

f.      Seizures;

g.      Cerebral palsy with developmental delays;

h.      Cognitive and motor dysfunction;

13

    i.       Speech and language difficulties;

    j.       Pain, suffering and mental anguish;

    k.       Diminished enjoyment and quality of life; and

    l.       Other and additional injuries as reflected in the Plaintiff's medical records.

39.    As a further direct and proximate result of the aforementioned negligence of these Defendants, Plaintiff J.H. has required and will continue to require substantial medical, nursing, and related care, various types of therapies such as physical, occupational, speech, rehabilitation, psychological and pharmaceutical, and other care including specialized devices, equipment, transportation, education and housing, for which significant sums of money have been and will continue to be expended.  Plaintiff J.H. has further sustained loss of future wage earning capacity.

## COUNT II: MEDICAL NEGLIGENCE

40.    Plaintiffs, Heather Heath and Gregory Heath, incorporate herein the averments contained in paragraphs 1 through 39, as though fully set forth herein.

41.    Plaintiffs Heather Heath and Gregory Heath, individually for their causes of action against Defendants Mayo, Dr. Jordan, and Dr. Johansen, state and allege:

42.    Defendants Dr. Jordan and Dr. Johansen, directly and/or as the actual and/or apparent agents, servants and/or employees of Defendant Mayo, owed a non-delegable duty to Plaintiffs J.H. and Heather Heath to use that degree of skill and learning of a doctor who

14

is in good standing, in a similar practice, and in similar circumstances.

43.    Defendants Dr. Jordan and Dr. Johansen, acting individually and/or as actual and/or apparent agents, servants and/or employees of Defendant Mayo, breached their non-delegable duty to Plaintiff J.H. and his mother Heather Heath, by failing to exercise reasonable care when applying that skill and learning in diagnosing and/or treating patients in the following particulars, among others as may be determined through legal discovery in this action:

a.    Failing to recognize and/or appreciate the significance of a non-reassuring electronic fetal heart tracings;

b.    Failing to timely respond to a non-reassuring fetal heart tracing;

c.    Failing to timely deliver Plaintiff J.H.;

d.    Failing to timely perform a cesarean section delivery;

e.    Failing to adequately instruct, train, and/or supervise their agents, servants and employees, including, but not limited to, nurses and resident physicians;

f.    Failing to recognize the severity of signs and symptoms of preeclampsia and the implications thereof and failure to properly treat the condition of preeclampsia.

g.    Failing to recognize the risk factors for placental abruption and failing to timely diagnose placental abruption;

15

h.  Failing to timely obtain a more senior obstetrical consultation;

i.  Failing to timely carry out a cesarean section after the decision to perform a cesarean section was made;

j.  Failing in other ways to diagnose, treat and manage Plaintiff Heather Heath's condition and that of her unborn child in accordance with the applicable standards of care;

k.  Failing to properly communicate among health care providers; and

l.  Other negligent acts or omissions which may become apparent throughout the course of discovery.

44.  The nurses caring for Plaintiffs, as the actual and/or apparent agents, servants and/or employees of Defendant Mayo, owed a non-delegable duty to Plaintiffs J.H. and Heather Heath to use that degree of skill and learning of a nurse who is in good standing, in a similar practice, and in similar circumstances.

45.  The nurses caring for Plaintiffs, as the actual and/or apparent agents, servants and/or employees of Defendant Mayo, breached their non-delegable duty to Plaintiff J.H. and his mother, Plaintiff Heather Heath, by failing to exercise that degree of skill and learning of a nurse who is in good standing, in a similar practice, and in similar circumstances, and were negligent in the following particulars, among others, as may be determined through legal discovery in this action:

a.  Failing to recognize a non-reassuring fetal heart tracing;

16

b.    Failing to timely respond to non-reassuring fetal heart tracings;

c.    Failing to timely notify the attending physician and/or go up the chain of command to properly treat preeclampsia after being ordered to administer only an anti-nausea medication in the face of severe preeclampsia; this order should have been so obviously negligent to lead reasonable nurses to anticipate that substantial injury to the patient would result form the physician's order or care;

d.    Failing to timely notify the attending physician and/or go up the chain of command to control the patient's blood pressure and effectuate delivery in response to markedly non-reassuring fetal monitor tracings; this order should have been so obviously negligent to lead reasonable nurses to anticipate that substantial injury to the patient would result from the physician's order or care;

e.    Failing to communicate possible signs of placental abruption to the appropriate personnel;

f.    Failing in other ways to manage Plaintiff Heather Heath's condition and that of her unborn child in accordance with the applicable standards of care; and

g.    Other negligent acts or omissions which may become apparent throughout the course of discovery.

46.     Defendant Mayo, directly and/or through its actual and/or apparent agents, servants and/or employees owed a non-delegable duty to Plaintiffs J.H. and Heather Heath to use reasonable care for the protection and well-being of its patients.

47.     Defendant Mayo, directly and/or through its actual and/or apparent agents, servants and/or employees breached their non-delegable duty to Plaintiffs J.H. and Heather Heath by failing to use reasonable care for the protection and well-being of its patients in the following particulars, among others, as may be determined through legal discovery in this action:

   a.     Failing to adequately instruct, train, and/or supervise its agents, servants and employees;

   b.     Failing to provide appropriately trained and skilled personnel to care for Plaintiff J.H. at the time of delivery;

   c.     Failing to establish and/or follow and/or enforce appropriate policies, procedures and/or protocols for cesarean section deliveries;

   d.     Failing to establish and/or follow and/or enforce appropriate policies, procedures and practices to properly manage patients such and Plaintiff Heather Heath; and

   e.     Failing to properly credential, supervise and/or provide adequate training to agents, servants and/or employees, including, but not limited to, the supervision of the labor and delivery staff and physicians who

18

cared for Plaintiff Heather Heath and her baby, Plaintiff J.H..

48.     As a direct and proximate result of the aforementioned negligence of Defendants Mayo, Dr. Jordan, and Dr. Johansen, directly and/or by and through their actual and/or apparent agents, servants and/or employees, Plaintiff J.H. Heath suffered the damage more fully described above in paragraph 38.  As a result of those damages to their son, Plaintiffs Heather Heath and Gregory Heath have incurred and will incur in the future expenses for the medical, surgical, nursing, therapeutic, rehabilitative and custodial care and attention for their son, Plaintiff J.H., as well as for specialized equipment, housing, education and other needs to accommodate his medical conditions.

49.     Prior to January 23, 2004, Plaintiffs Heather Heath and Gregory Heath anticipated that Plaintiff J.H. would be born in no distress, physically or emotionally, and that they would be able to enjoy J.H.'s care, aid, comfort, society and companionship and services.

50.     As a further result of the negligence of the Defendants and the resulting damages to their son, Plaintiffs Heather Heath and Gregory Heath have been and will continue to be deprived of an emotional relationship with Plaintiff J.H.  Plaintiffs Heather Heath and Gregory Heath have in the past and will in the future suffer mental pain and anguish so as to give rise to a cause of action against the Defendants for loss of Plaintiff J.H.'s services, companionship and consortium to the present and into the future.

51.     As a further result of the negligence of the Defendants, Plaintiff Heather Heath

19

has incurred severe and permanent injury as a result of the aforesaid placental abruption, which has caused and will continue to cause severe pain and suffering and has forced the Plaintiff Heather Heath to incur medical bills in the past and will in the future, as well as a loss of wages and wage earning capacity.

52.    WHEREFORE, Plaintiff J.H., a minor child, by his parents and natural guardians, Heather Heath and Gregory Heath, prays for judgment against Defendants, Mayo, Dr. Jordan and Dr. Johansen, jointly and severally, in an amount to be determined by a jury, together with his costs and disbursement herein and interest allowable pursuant to Minn. Stat. § 549.09; and Plaintiffs Heather Heath and Gregory Heath, individually, pray for judgment against the Defendants for compensation for medical and life care services referenced in this Complaint which have been incurred and will be incurred by Plaintiffs Heather Heath and Gregory Heath, as well as for the loss of Plaintiff J.H.'s services, companionship and consortium, and also mental pain and anguish, to the present and into the future, as well as for the injures sustained by Plaintiff Heath Heath, and other economic and non-economic damages outlined in this Complaint in an amount to be determined by a jury, together with their costs and disbursements herein and interest allowable pursuant to Minn. Stat. § 549.09.

Respectfully submitted,

**RISCHMILLER & KNIPPEL, LLP**

s/ Reid G. Rischmiller _____

Reid G. Rischmiller (Bar No. 91911)
333 South Seventh Street, Suite 420
Minneapolis, Minnesota 55402
(612) 339-7075

*Attorneys for Plaintiff*

Of counsel:

Howard A. Janet
Kenneth M. Suggs
Stephen C. Offutt
Keith D. Forman
Janet, Jenner & Suggs, LLC
1829 Reisterstown Road, Suite 320
Baltimore, Maryland 21208
(410) 653-3200

## ACKNOWLEDGMENT

Plaintiffs, by their attorneys, hereby acknowledge that costs, disbursements, and reasonable attorney and witness fees may be awarded to the opposing party or parties pursuant to Minn. Stat. § 549.21.

Dated: January __18th__, 2008

Respectfully submitted,

**RISCHMILLER & KNIPPEL, LLP**

s/ Reid G. Rischmiller
Reid G. Rischmiller (Bar No. 91911)
333 South Seventh Street, Suite 420
Minneapolis, Minnesota 55402

21

(612) 339-7075

*Attorneys for Plaintiff*

Of counsel:

Howard A. Janet
Kenneth M. Suggs
Stephen C. Offutt
Keith D. Forman
Janet, Jenner & Suggs, LLC
1829 Reisterstown Road, Suite 320
Baltimore, Maryland 21208
(410) 653-3200

## JURY DEMAND

The Plaintiffs, J.H., a minor, by and through his parents and natural guardians, Heather Heath and Gregory Heath, and Heath Heath and Gregory Heath, individually, through their attorneys, request a jury on all issues raised herein.

Respectfully submitted,

**RISCHMILLER & KNIPPEL, LLP**


s/ Reid G. Rischmiller
Reid G. Rischmiller (Bar No. 91911)
333 South Seventh Street, Suite 420
Minneapolis, Minnesota 55402
(612) 339-7075

*Attorneys for Plaintiff*

Of counsel:

Howard A. Janet
Kenneth M. Suggs
Stephen C. Offutt
Keith D. Forman
Janet, Jenner & Suggs, LLC
1829 Reisterstown Road, Suite 320
Baltimore, Maryland 21208
(410) 653-3200

23